IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JASON N. GORDON, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO. |
| | : 1:09-CV-3493-CC |
| STARWOOD HOTELS & RESORTS WORLDWIDE, INC. d/b/a WESTIN PEACHTREE PLAZA and JOHN DOE and JAMES DOE, | : |
| Defendant. | : |

**OPINION AND ORDER**

This premises liability action is before the Court on Plaintiff's Motion for Protective Order [Doc. No. 46] and Defendant's Motion for Summary Judgment [Doc. No. 57]. For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Protective Order **as moot**.

**I.   FACTS** [1]

For purposes of summary judgment, the following material facts are undisputed. Plaintiff Jason Gordon came to Atlanta in 2007 for the Memorial Day weekend to celebrate his 30th birthday. (Defendant's Statement of Undisputed Material Facts "DSMF" ¶1.) During his visit, Plaintiff rented a room for two nights

---

[1] Plaintiff has objected to Defendant's failure to list material facts in separate, concise, numbered statements in Defendant's Statement of Undisputed Material Facts [Doc. No. 57-2]. The Court's review of the parties' summary judgment filings reveals, however, that neither Plaintiff nor Defendant has complied strictly with this Court's local rule regarding summary judgment filings, Local Rule 56.1. Plaintiff, for example, filed an Amended Response in Opposition to Defendant's Motion for Summary Judgment [Doc. No. 64] (the "Amended Response"), which violates Local Rules 7.1(C) and 56.1(A). Nevertheless, this Court exercises its discretion to consider Plaintiff's Amended Response and to consider all facts set forth by the parties that the Court deems material and that are supported by evidence in the record.

at the Westin Peachtree Plaza Hotel in downtown Atlanta (the "Hotel" or "Defendant"). (DSMF ¶ 1.)

On the night of May 26, 2007, Plaintiff, along with Carl Gordon (Plaintiff's brother), George Bibb (Plaintiff's friend from New Jersey), and Thomas Reynolds (Plaintiff's current attorney), went to the Lotus Lounge nightclub. (DSMF ¶ 3.) Two other friends of Plaintiff, Lamech Darien and Jerrod Graham, were hosting a special fund-raising event for NFL and NBA athletes that night at the Lotus Lounge. (DSMF ¶ 3.) While at the nightclub, Plaintiff and his entourage were seated in a VIP section. (DSMF ¶ 4.) Mr. Graham primarily worked inside the club and made sure athletes were seated in the sections reserved for them, and Mr. Darien primarily worked outside the nightclub. (Id.)

When the nightclub closed at 3:00 a.m., Plaintiff and his entourage headed back to the Hotel. (DSMF ¶ 5.) Plaintiff rode in the backseat of a car driven by his brother, Carl Gordon. (Id.) Plaintiff does not remember who was in the driver's side passenger seat. (Id.)

Mr. Graham and Mr. Darien rode together in a separate car from the nightclub and arrived at the Hotel prior to Plaintiff and his entourage. (DSMF ¶ 7.) When they pulled into the motor lobby of the Hotel, there was a line of cars. (Id.) The Hotel valet was assisting one of the cars in front of them. (Id.)

While Mr. Darien waited for the valet's assistance, Mr. Graham got out of the car and started walking towards the entrance of the Hotel. (DSMF ¶ 8.) As Mr. Graham walked towards the entrance, he saw another group of people walking towards the entrance. (Id.) The group consisted of three to five black males, including the men who started the fight that is the subject of this lawsuit. (Id.) The group of males looked like they could have been Hotel guests getting out of their cars to head into the Hotel. (DSMF ¶ 9.) There was nothing suspicious about the group of men, and nothing about the group scared or alarmed Mr. Graham or made him think they were about to attack him. (Id.) The men were not yelling or running,

and they did not say anything to Mr. Graham before attacking him.  (Id.)  Mr. Graham has no idea why they attacked him.  (Deposition of Jerrod Graham "Graham Dep." at 39:11-12.)  Mr. Graham recognized one of the men in the group as "Kerris" from previous events he had put on.  (Id. at 35:2-17.)  As Mr. Graham arrived at the entrance, he was hit in the face by the man he recognized as "Kerris" and then other members of the group jumped him from behind.  (Id. at 39:19-40:1-9.)

Plaintiff was getting out of the car driven by his brother, Carl, when he first saw Mr. Graham being attacked.  (DSMF ¶¶ 6, 11.)  Plaintiff, intending to see what was going on, stepped out of the car and took two steps towards the altercation. (Deposition of Jason Gordon ("Gordon Dep.") at 66: 2-22.)  Plaintiff does not know where the attackers came from.  (DSMF ¶¶ 6, 11.)  Other than his memory of getting out of the car and taking two steps, he has no memory of anything related to the fight.  (Id.)

Meanwhile, as Mr. Darien was walking towards the valet attendant to give him his keys, he noticed the fight involving the group of males and recognized Mr. Graham and Plaintiff.  (DSMF ¶ 12.)  Specifically, Mr. Darien testified:

> Q   And you got out of the car to try to find a valet person?
>
> A   Yes.
>
> Q   And what happened after that?
>
> A   I remember getting his attention, walking towards him to give him my keys, and then seeing the fight had broken out.
>
> Q   The fight being between Jerrod and some guys?
>
> A   There were a group of people there.  I think Jason was there and Jerrod was there.
>
> Q   When you first saw the fight, who was involved that you knew?
>
> A   I only recognized Jerrod and Jason.

(Darien Dep. at 23:18-24:6.)  Mr. Darien further testified:

> Q   When you saw the fight break out, what did you do?

- 3 -

> A    First, I looked around for security, asked the valet for help. When I saw nobody was coming over, I went over and tried to break it up.
>
> Q    Did you actually break it up?
>
> A    There was kind of a stand-off. There was a point where Jason got hit with a bottle, and he was unconscious. That kind of put everybody in a shock and they went their separate ways after that.

(Id. at 28:12-16.)

Plaintiff was taken by ambulance to Grady Memorial Hospital. (Gordon Dep. at 81:8-20.) Plaintiff's brother, Carl Gordon, rode with Plaintiff to the hospital. (Id.) Plaintiff returned from Grady Hospital to the Hotel early Sunday morning. (Id.)

Darryl Jett, the Hotel manager, indicated that it is normal for the Hotel to employ four to five security personnel during the 11:00 p.m. to 7:00 a.m. shift. (Deposition of Darryl Jett ("Jett Dep.") 21:7-9; PSMF ¶ 25.) As a part of their duties, the security guards are required to perform their normal duties as security staff as well as other non-security-related duties for the Hotel. (PSMF ¶ 25.) Mr. Jett indicated that the Hotel security staff is responsible for monitoring guest areas and other checkpoints throughout the Hotel. (Jett Dep. at 32:9-23.)

Mr. Jett indicated that the Hotel also has cameras located on the outside of the building. (Jett Dep. at 44:14-25.) The cameras located outside were installed and upgraded in 2007. (Id. at 65:3-16.) The security system and surveillance cameras used by the Hotel have the capability of recording directly to a computer. (PSMF ¶ 26; Jett Dep. at 65:17-25.) Mr. Jett indicated that although there is a camera in the motor lobby that has recording capabilities, on the day in question, the recording system was not working and operational. (PSMF ¶ 28.) In fact, the security recording system had not been working properly since late 2006. (Jett Dep. at 66:12-25.)

According to Mr. Jett, for at least four years prior to the incident involving Plaintiff, there had not been any fights, attacks, assaults or violent crimes of any kind inside the Hotel or in the motor lobby area. (DSMF ¶ 20; Jett Aff. ¶¶ 4, 5.) The

Hotel, however, is located in an area where previous crimes have occurred. (PSMF ¶ 23.)

## II.   STANDARD OF REVIEW

Summary judgment is proper when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In seeking summary judgment, the moving party bears the initial responsibility to demonstrate there is no genuine issue as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The moving party's burden is discharged merely by showing that there is an absence of evidence supporting an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). The moving party is entitled to summary judgment when the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof. Celotex, 477 U.S. at 323.

A fact is material when the controlling substantive law identifies it as an essential element of the non-moving party's case. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Additionally, an issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. An issue of fact is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." Id. at 249-250. "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

## III. DISCUSSION

Plaintiff asserts claims in this action for negligent failure to maintain the premises in a reasonably safe manner, failure to warn of unsafe conditions, and negligent infliction of emotional distress. Plaintiff also asserts assault and battery claims against only John Doe and James Doe, who have never been named or served. Plaintiff finally seeks to recover punitive damages.

The Court need not and does not address the merits of Plaintiff's assault and battery claims against John Doe and James Doe, as these defendants and the claims against them are due to be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for lack of service. However, for the reasons stated below, Defendant Starwood Hotels & Resorts Worldwide, Inc. d/b/a Westin Peachtree Plaza ("Defendant") is entitled to summary judgment as to all of Plaintiffs' other claims.

### A.   Negligent Failure to Maintain the Premises

To prevail on a cause of action for negligence under Georgia law, the plaintiff must establish the essential elements of duty, breach of duty, proximate causation and damages. Black v. Georgia S. & Fla. Ry. Co., 202 Ga. App. 805, 806, 415 S.E.2d 705 (1992). Under Georgia law, the owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe. O.C.G.A. § 51-3-1. Nonetheless, while the law imposes such a duty on the property owner, the proprietor is not the insurer of the invitee's safety, and a mere showing that an injury occurred while on the premises of a proprietor is not sufficient, by itself, to create a presumption of negligence. Lee v. Food Lion, 243 Ga. App. 819, 820, 534 S.E.2d 507 (2000); Cleghorn v. Winn Dixie Stores, 228 Ga. App. 766, 767, 492 S.E.2d 745 (1997).

With respect to the duty of a property owner to keep an invitee safe from the criminal act of a third party, there are two principles of law that govern the imposition of liability for the failure to protect against such a criminal act. B-T Two, Inc. v. Bennett, 307 Ga. App. 649, 654-55, 706 S.E.2d 87 (2011) (citations omitted). In B-T Two, the Georgia Court of Appeals set forth these two principles as follows:

> The first of these principles is that an owner or occupier must protect an invitee against the criminal act of a third party only to the extent that the criminal act is reasonably foreseeable. The second principle is that, even when a criminal act is reasonably foreseeable, an owner or occupier is not liable for injuries resulting from the criminal act of a third party unless he had superior knowledge of the danger.

307 Ga. App. at 655 (internal citations omitted).

The plaintiff's evidentiary burden is to establish foreseeability of criminal acts by the existence of prior similar crimes on the premises or within close proximity of the premises. Drayton v. Kroger Co., 297 Ga. App. 484, 485, 677 S.E.2d 316 (2009); Donaldson v. Olympic Health Spa, Inc., 175 Ga. App. 258, 260, 333 S.E.2d 98 (1985). In order to be "substantially similar," Georgia law requires that the circumstances surrounding the prior incidents be sufficiently similar "to attract the owner's attention to the dangerous condition which resulted in the litigated incident." Grandma's Biscuits, Inc. v. Baisden, 192 Ga. App. 816, 817, 386 S.E.2d 415 (1989) (citation and internal quotes omitted). The crimes must: (1) occur at comparable locations; (2) occur under similar physical circumstances and conditions; (3) be of similar type; and (4) not be too remote in time. Burnett v. Stagner Hotel Courts, Inc., 821 F. Supp. 678, 683 (N.D. Ga. 1993). "Although the prior criminal activity must be substantially similar to the crime in question, there is no requirement that the crimes be identical." Walker v. Aderhold Props., Inc., 303 Ga. App. 710, 712, 694 S.E.2d 119 (2010) (citation omitted).

In the case at bar, Plaintiff has not presented competent evidence that the criminal act committed against him by the unidentified third parties was reasonably foreseeable. Plaintiff contends that a report quantifying and listing the various

crimes occurring at or within the area surrounding the Hotel between 2000 and 2008[2] and the deposition of part-time security guard Ted Skinner are sufficient to create or demonstrate a genuine issue of material fact as to whether Defendant was on notice of potential criminal assaults on guests of the Hotel.  The Court disagrees.

As Defendants argue in moving for summary judgment, Plaintiff cannot point to any crimes occurring at or in close proximity to the Hotel that are substantially similar to the incident at issue in this case.  First, the portions of Mr. Skinner's deposition testimony attached to Plaintiff's summary judgment filings indicate that Mr. Skinner testified that he did not recall any violent crimes occurring at the Hotel and no robberies, in particular.  He was aware that there had been guest room thefts, but he emphasized that there had been no robberies or other incidents like that.  Second, the crime report, which is attached to the unnotarized affidavit of Curtis Davenport, the custodian or records for Atlanta Police Department, purportedly pertains to "criminal activity at 210 Peachtree Street Atlanta, Ga," (Affidavit of Curtis Davenport "Davenport Aff." ¶ 2), which the Court judicially notes is the address for the Hotel.  However, part of the crime report on which Plaintiff relies heavily pertains to "Crime for Beat 506, **including** 210 Peachtree St." (Doc. No. 64-9 at 3) (emphasis added).  Plaintiff offers no information or evidence regarding the breadth of the geographical area covered within "Beat 506," but this particular page of the report's use of the phrase "including 210 Peachtree St" indicates that the crime statistics reported on the page cover geographical areas beyond the Hotel.  There simply is insufficient evidence for the Court to conclude that the areas included are in such close proximity to the Hotel so as to put the Hotel on notice of the possibility of criminal activity occurring at the Hotel.  The other pages of the report do appear to relate to criminal activity occurring specifically at the address of the Hotel.

---

[2] The Court notes that crimes that occurred in 2008 would not have put the Hotel on notice of the possibility of criminal activity in 2007.  See Drayton, 297 Ga. App. at 487.

However, the crimes, which occurred over the aforementioned eight-year period, include robbery, assault and battery, burglary, larceny, shoplifting, and theft of automobiles, trucks, vans, or buses. Of the 338 incidents reported during the eight-year period, the overwhelming majority are shoplifting offenses or crimes of larceny from the building or vehicles. The Court therefore rejects Plaintiff's position that there were thousands of crimes and hundreds of violent crimes that occurred at the Hotel between 2006 and 2008, which would have put the Hotel on notice of the possibility of a violent crime occurring like the one in this case. See Agnes Scott College, Inc. v. Clark, 273 Ga. App. 619, 616 S.E.2d 468 (2005) (awarding summary judgment where the prior criminal acts relied on by the plaintiff, including general crime statistics and evidence of previous minor property crimes in the area, "[did] not suggest that personal injury would occur in the manner that it did in [that] case"). There were only seven violent crimes that occurred at the address of the Hotel within five years preceding the incident in dispute. Five of these incidents appear to be robberies that occurred on the street, and two of these incidents involved some type of assault. While the circumstances surrounding these incidents are otherwise unknown and the incidents arguably might have been substantially similar to the incident in question, significantly, Plaintiff has pointed to absolutely no evidence that the Hotel had knowledge of these incidents. To the contrary, Defendant has come forward with the affidavit of Darryl Jett, the manager of the Hotel, who attested that he completed a comprehensive security review when he began working at the Hotel in the summer of 2006. That review informed "that for at least five years prior to plaintiff's assault, there [were] no violent crimes of any kind in the Hotel or in the motor lobby area." (Jett Aff. ¶ 4.) He further attested that "[t]o the extent that there may have been violent crimes in the nearby downtown Atlanta area, the Hotel has no knowledge or information about any of them." (Id.) Accordingly, the crime report is insufficient to establish that the crime that occurred in this case was reasonably foreseeable and that the Hotel had any duty to warn

Plaintiff of or protect him against the criminal activities of the third parties who assaulted him. See Whitmore v. First Federal Sav. Bank of Brunswick, 225 Ga. App. 768, 769, 484 S.E.2d 708 (1997) ("With regard to the police reports and printouts, although it is true they demonstrate that certain crimes of violence occurred in the area surrounding the bank over a two year period, they do not demonstrate that First Federal had any knowledge concerning such crimes."); Sun Trust Banks, Inc. v. Killebrew, 266 Ga. 109, 109-110, 464 S.E.2d 207 (1995) (holding that bank was not liable to customer shot by third party since the bank had no knowledge of the prior crime that occurred).[3]

Defendant also is entitled to summary judgment because the Hotel did not have superior knowledge of the harm and Plaintiff assumed the risk of harm. As stated supra, the true basis for an owner's liability is his superior knowledge of the existence of a condition that could subject his invitees to an unreasonable risk of harm or injury. Garret v. Hanes, 273 Ga. App. 894, 895, 616 S.E.2d 202 (2005). Under Georgia case law, if an invitee knows of a dangerous condition, there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge of the danger as the proprietor. Pound v. Augusta Nat'l, Inc., 158 Ga. App. 166, 167, 279 S.E.2d 342 (1981). Here, Plaintiff admits to having had knowledge of the dangerous, ongoing altercation before he exited his vehicle and moved towards the altercation with the intent of seeing what was going on. All evidence indicates that Plaintiff knew of and appreciated the danger and willingly proceeded, despite the danger. Thus, Plaintiff essentially assumed the risk. See Fagan v. Atnalta, Inc., 189 Ga. App. 460, 461, 376 S.E.2d 204 (1998); Sailors v. Esmail Int'l, 217 Ga. App. 811, 813, 459 S.E.2d 465 (1995). At the very least, his knowledge of the dangerous condition was equal, if not superior, to

---

[3] Plaintiff's reliance on Meyers v. Ramada Hotel Operating Co., 833 F.2d 1521 (11th Cir. 1987), a case applying Florida law, is misplaced.

Defendant's.

The Court further rejects Plaintiff's position that Defendant failed to maintain the premises in a reasonably safe manner and that the alleged inadequate security measures of the Hotel proximately caused Plaintiff's injury. Prior to the start of the altercation, there was nothing about the group of aggressors that would have caused Hotel security to be suspicious. According to the evidence pointed to by Defendant, the men looked like they could have been guests returning to the Hotel. They were not running, yelling, or acting suspicious. Simply put, there was nothing to suggest that the group of men who attacked Plaintiff and Mr. Graham did not belong in the motor lobby, that they should not have been there at that time, or that Hotel security should have removed them from the motor lobby before the fight broke out. There simply is no evidence that the Hotel's security staffing was negligent in any manner, and there likewise is no evidence that the Hotel could have done anything to prevent or shorten the fight prior to Plaintiff's injury.

Plaintiff maintains that if Defendant had properly working security cameras and a reasonable number of security guards working in the motor lobby on the night in question, Plaintiff's attackers would have been deterred. However, "a plaintiff must do more than merely speculate as to whether enhanced security measures would have prevented an attack." Walker, 303 Ga. App. at 714-15. Plaintiff's assertion that a properly working security system and a reasonable number of security guards in the Hotel's motor lobby would have served as a deterrent for the attackers is merely speculative and is not supported by competent evidence. Plaintiff has failed to present any argument or evidence as to how the inability of the security camera to record to videotape caused or contributed to this incident. Moreover, there is no evidence that the Hotel violated any standard of care by having four or five security officers present on the premises at the time in question. There is no evidence, for example, that this fight was started because there were no security officers in view. Plaintiff has not provided any evidence demonstrating a

causal link between the security measures taken or not taken by the Hotel and the injuries sustained by Plaintiff to support his claim of Defendant's negligence. "A plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." Post Props., Inc. v. Doe, 230 Ga. App. 34, 39, 495 S.E.2d 573 (1997) (citation omitted). "Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." Id. (citation omitted). Therefore, the Court concludes that there is an absence of evidence to demonstrate causation.

B. Negligent Failure to Warn and Negligent Infliction of Emotional Distress

Defendant is entitled to summary judgment on Plaintiff's negligent failure to warn and negligent infliction of emotional distress claims because Plaintiff has abandoned the claims by failing to address them in response to Defendant's Motion for Summary Judgment. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Road Sprinkler Fitters v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (same). Moreover, as the Court's analysis above demonstrates, these claims also are without substantive merit. Plaintiff is unable to show that Defendant was negligent in any manner. Defendant had no notice of any latent dangers and had no obligation to warn invitees of a generalized risk of crime. Anderson v. Radisson Hotel Corp., 834 F. Supp. 1364, 1372 (S.D. Ga. 1993) (citations omitted).

C. Punitive Damages

Plaintiff seeks to recover punitive damages from Defendant. "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice,

fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A § 51-12-5.1(b). "In accordance with O.C.G.A. § 51-12-5.1, punitive damages can only be awarded as additional damages." Nelson v. Glynn-Brunswick Hosp. Auth., 257 Ga. App. 571, 580, 571 S.E.2d 557 (2002).  Here, because Plaintiff has failed to establish that he has any viable claim against Defendant, Plaintiff cannot recover punitive damages.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment [Doc. No. 57].  In granting summary judgment, the Court **DENIES as moot** Plaintiff's Motion for Protective Order [Doc. No. 46]. Defendants John Doe and James Doe and the assault and battery claim asserted against only them are hereby **DISMISSED without prejudice** pursuant to Federal Rule of Civil Procedure 4(m).

SO ORDERED this 26th  day of September, 2011.


s/   CLARENCE COOPER

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE